**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WILLIAM E. BARONI, JR. and BRIDGET ANNE KELLY,<br><br>Defendants. | Case: 2:15-cr-00193-SDW<br><br>**OPINION**<br><br>March 1, 2017 |

**WIGENTON**, District Judge.

Before this Court are Defendants William E. Baroni Jr. ("Baroni") and Bridget Anne Kelly's ("Kelly") (collectively, "Defendants") Motions for Judgments of Acquittal pursuant to Federal Rule of Criminal Procedure 29 and Motions for a New Trial pursuant to Federal Rule of Criminal Procedure 33.[1]

For the reasons stated below, the Motions are **DENIED**.

---

[1] All citations in this Opinion to "BB" refer to Baroni's Brief in Support of his Motion for Judgment of Acquittal/New Trial and all citations to "KB" refer to Kelly's Brief in Support of her Motion for Judgment of Acquittal/New Trial. Citations to "GB" refer to the Government's Opposition Brief and citations to "GX" refer to Government trial exhibits.

As Defendants seek to join each other's motions, arguments made by one defendant are applied to both, unless otherwise noted. (KB at 58 (stating that "[t]o the extent not inconsistent with her arguments, Ms. Kelly joins in the arguments put forth by Mr. Baroni"); Baroni Letter (Dkt. No. 306) (stating that "Mr. Baroni hereby joins in Ms. Kelly's post-trial motions").)

I. **BACKGROUND AND PROCEDURAL HISTORY**

This Court assumes familiarity with the allegations and procedural history of this case and reviews only the facts relevant to the present motions. On April 23, 2015, Baroni, former Deputy Executive Director of the Port Authority of New York and New Jersey ("Port Authority"), and Kelly, former Deputy Chief of Staff for Legislative and Intergovernmental Affairs for the Office of the Governor of New Jersey were indicted by the United States Attorney's Office for the District of New Jersey for their alleged roles in improperly closing lanes on the George Washington Bridge in September 2013 to create traffic problems in order to punish the Mayor of Fort Lee, New Jersey, Mark Sokolich ("Sokolich"), for refusing to endorse Governor Chris Christie's re-election campaign. (Dkt. No. 1, Indictment at 4-5.)

The Indictment charged Defendants as follows:

Count 1: Conspiracy to Obtain by Fraud, Knowingly Convert, and Intentionally Misapply Property of an Organization Receiving Federal Benefits in violation of 18 U.S.C. § 666(a)(1)(A) and 18 U.S.C. § 371.

Count 2: Obtaining by Fraud, Knowingly Converting, and Intentionally Misapplying Property of an Organization Receiving Federal Benefits in violation of 18 U.S.C. § 666(a)(1)(A) and § 2.

Count 3: Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349.

Counts 4-7: Wire Fraud in violation of 18 U.S.C. § 1343 and § 2.[2]

Count 8: Conspiracy against Civil Rights in violation of 18 U.S.C. § 241.

Count 9: Deprivation of Civil Rights in violation of 18 U.S.C. § 242 and § 2.

---

[2] Counts Four and Six were brought against Defendant Kelly and counts Five and Seven against Defendant Baroni.

On February 1, 2016, Defendants moved to dismiss the Indictment. (Dkt. Nos. 71, 72.) On June 13, 2016, this Court denied those motions. *See United States v. Baroni*, Crim No. 15-193(SDW), 2016 WL 3388302 (D.N.J. June 13, 2016). Trial began on September 19, 2016 and the jury began deliberating on October 31, 2016. On November 1, 2016, the jury sent Jury Note 4 which read, "Can you be guilty of conspiracy without the act being intentionally punative [sic] toward Mayor Socholich [sic]." (Dkt. No. 259.) After hearing oral argument from the defense and prosecution, (11/1/16 Tr. at 16-28) the Court responded, "Yes. Please consider this along with all other instructions that have been given to you." (Dkt. No. 260.) On November 2, 2016, the jurors were instructed not to deliberate while the parties and the Court conferred on an issue that had arisen. (11/2/16 Tr. at 5:20-23.) That same day, Defendants moved for reconsideration of the Court's response to Jury Note 4, and also sought broad reconsideration of the Court's holding that the Government was not required to prove beyond a reasonable doubt that Defendants sought to punish Mayor Sokolich. (Dkt. No. 265.) The Government opposed, and this Court denied, the motion on November 3, 2016. (Dkt. Nos. 271, 272.) That same day, the jury was instructed to resume deliberations. On November 4, 2016, the jury found Defendants guilty on all counts.[3] Defendants filed Notices of Motion for Judgments of Acquittal/New Trial on November 11, 2017[4] and filed their briefs in support of their motions on December 19, 2016. The Government filed its opposition on January 17, 2017.[5]

---

[3] On November 3 and 4, 2016, Defendants also filed motions asking this Court to instruct the jury to disregard certain evidence regarding Jersey City Mayor Steven Fulop and Mayor Sokolich. (Dkt. Nos. 274, 278.) The jury returned its verdict before this Court was able to rule on those motions. Therefore, they will be dismissed as moot.

[4] Defendants moved for judgments of acquittal pursuant to Rule 29 at the close of the Government's case and also at the close of the defense case. (*See,* 10/14/16 Tr. at 61:4-12, 70:5-7; 10/26/16 Tr. at 45:6-18.) This Court reserved decision and addresses all issues raised by those motions in this Opinion.

[5] Defendants waived their right to reply. (Dkt. No. 303.)

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 29 requires the district court to enter a judgment of acquittal for "any offense for which the evidence is insufficient to sustain a conviction." FED. R. CRIM. P. 29(a). However, the court must "sustain the verdict if there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision." *United States v. Gambone*, 314 F.3d 163, 169-70 (3d Cir. 2003); *see also United States v. Flores*, 454 F.3d 149, 154 (3d Cir. 2006). In reviewing a motion for acquittal, the court "must be ever vigilant . . . not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *Flores*, 454 F.3d at 154 (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). The court must view "the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008) (internal citations omitted); *see also United States v. Styles*, No. 15-2629, 2016 WL 4254914, at \*\*3 (3d Cir. Aug. 12, 2016). The government also receives "the benefit of inferences that may be drawn from the evidence and the evidence may be considered probative even if it is circumstantial." *United States v. Pecora*, 738 F.3d 614, 618 (3d Cir. 1986). As such, a defendant bears "a heavy burden" to establish that the trial evidence was insufficient to support a conviction. *United States v. Young*, 334 Fed. App'x 477, 480 (3d Cir. 2009); *see also United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990).

The standard under Federal Rule of Criminal Procedure 33 is "more general" and provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." *United States v. Tiangco*, No. 15-567(KM), 2016 WL 7104841, at \*2 (D.N.J. Dec. 5, 2016) (citing FED. R. CRIM. P. 33(a)). However, "even if a district court believes that the jury verdict is contrary

to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted.'" *Silveus¸* 542 F.3d at 1004-05 (quoting *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002)). The court is not required to "view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *Johnson*, 302 F.3d at 150. "Such motions are not favored and should be 'granted sparingly and only in exceptional cases.'" *Silveus*, 542 F.3d at 1005 (internal citations omitted).

### III.   DISCUSSION

Defendants challenge their conviction on all counts, raising both constitutional and sufficiency of the evidence arguments. Before turning to Defendants' count-specific arguments, this Court first addresses the Government's burden of proof as to whether Defendants acted to punish Mayor Sokolich.

### A.

Defendants generally contend that the punishment of Mayor Sokolich was "an essential element of each of the charged offenses" which the Government was required to prove beyond a reasonable doubt. (KB at 1, 3, 5.)[6] As this Court has previously held, however, any punitive goal Defendants may have had goes to their motive for violating the charged statutes, it is not an essential element of any of the crimes charged.[7] *See, e.g.*, *United States v. Sriyuth*, 98 F.3d 739, 747 n.12 (3d Cir. 1996) (stating that "motive is always relevant" even though it is not a necessary element of a crime); 3D CIR. MODEL JURY INST. § 5.04 (instructing that "[i]ntent and

---

[6] Kelly devoted most of her 60 page brief to this issue.

[7] *See* 9/19/16 Tr. 4:17-25 ("Motive is not an element that has to be proven. Motive is not an element of the conspiracy."); 10/25/16 Tr. 187:4-13 (referring to punishment of Mayor Sokolich as "motive" that "goes beyond what the object of the conspiracy is" which was "misusing [Port Authority] funds");

motive are different concepts" and noting that "[m]otive is what prompts a person to act" but "[i]ntent refers only to the state of mind with which the particular act is done").  Defendants' motivation to punish Mayor Sokolich was central to the Government's case – the prosecution included that allegation in the Indictment (Dkt. No. 1 at ¶¶ 4, 7, 12-18), referred to it in the prosecution's opening statement (9/19/16 Tr. 17-36), and introduced evidence of Defendants' punitive goals during trial, (*see, e.g.*, GX5003-BK-03a; 9/26/16 Tr. at 65:1-8, 66:3-10, 81:18-25; 10/5/16 Tr. at 119:16) – but only as a means of explaining to the jury why Defendants may have violated the law.  Because it is not an element of the offenses charged, the Government was under no obligation to introduce evidence of motive, although motive helps present a coherent narrative of events to a jury.  It is not criminal under Section 666 to punish or conspire to punish Mayor Sokolich; rather, it is criminal under Section 666 to intentionally misuse Port Authority property.

      Therefore, it would have been improper to have instructed the jury that Defendants' punitive motive was an essential element of any of the crimes at issue.  Indeed, as to the conspiracy charges, this Court was required to instruct the jury not as to Defendants' motives, but as to the object of the conspiracies charged: to misuse Port Authority resources (Count One), to defraud the Port Authority (Count Three), and to violate the travel rights of Fort Lee residents (Count Eight).  *See, e.g.*, 18 U.S.C. § 371 (defining the object of the conspiracy as the commission of "any offense against the United States").[8]

---

[8] The jury may have convicted Defendants not knowing what drove them to act as they did or even believing that each defendant had a different motive.  *See, e,g.*, *United States v. Cervantes*, 466 F.2d 736, 738 (7th Cir. 1972) (finding that a conspiracy can exists even where members "have dissimilar motives for participating in it"); *United States v. Harrison*, 942 F.2d 751, 756 (10th Cir. 1991) (stating that "[t]he goals of all the participants need not be congruent for a single conspiracy to exists, so long as their goals are not at cross purposes") (internal citation omitted).

This Court's response to Jury Note 4 properly reflected this distinction. The jury asked if it was required to find that Defendants acted to intentionally punish Mayor Sokolich and this Court replied in the negative. The response did not, as Defendants argue, negate the need to prove intent, it merely negated the need to prove Defendants' motive. The jury was allowed to consider, but was not required to find, that Defendants wanted to retaliate against Mayor Sokolich.

B.

**Counts One & Two**

Counts One and Two charge conspiracy to violate and substantive violations of 18 U.S.C. § 666(a)(1)(A). Section 666 provides in relevant part:

> **(a)** Whoever, if the circumstance described in subsection (b) of this section exists--
> **(1)** being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof--
> **(A)** embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that--
> **(i)** is valued at $5,000 or more, and
> **(ii)** is owned by, or is under the care, custody, or control of such organization, government, or agency;
> . . .
> shall be fined under this title, imprisoned not more than 10 years, or both.
> 18 U.S.C. § 666(a)(1)(A).

---

This Court finds no merit in Defendants' argument that their Sixth Amendment right to a unanimous verdict was violated because "the jury did not unanimously find that the government proved punishment beyond a reasonable doubt," (KB at 35) as Defendants' punitive purpose is not an essential element of the crime.

Nor did the Court's refusal to instruct the jury that the Government was required to prove punishment beyond a reasonable doubt constructively amend the indictment, (KB at 35-36), because an indictment is only constructively amended "when, in the absence of a formal amendment, the evidence and jury instructions at trial modify essential terms of the charged offense." *United States v. Duka*, 671 F.3d 329, 352 (3d Cir. 2011) (internal citation omitted). Motive is not an essential term of any of the charged offenses.

Defendants seek judgments of acquittal on Counts One and Two, arguing 1) that Section 666(a)(1)(A) is void for vagueness as applied, 2) the government failed to present sufficient evidence that Defendants "agreed to or did obtain property by fraud, act without authority, or intentionally misapply property of the Port Authority," and 3) the government failed to present sufficient evidence that the property in question had a value of at least $5,000. (BB at 1.)

1.      *Void for Vagueness*

A criminal statute is void for vagueness if it "'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' or is so indefinite that 'it encourages arbitrary and erratic arrests and convictions.'" *Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (internal citations omitted); *see also United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008); *United States v. Moyer*, 674 F.3d 192, 211 (3d Cir. 2012). This doctrine "does not mean that [a] statute must define every factual situation that may arise." *United States v. Nelson*, 712 F.3d 498, 508 (11th Cir. 2013). Rather, a statute is sufficiently clear "where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).

Defendants take the position that Section 666 is void for vagueness as applied to them because the "misapplication" provision, § 666(a)(1)(A), fails to provide sufficient guidance to "ordinary people" or law enforcement to "understand what conduct is prohibited." (BB at 18-24.) Baroni specifically asserts that the "misapplication" provision "effectively criminalizes making any decision to expend Port Authority resources with political considerations in mind." (BB at 20.)

As this Court noted previously, "[t]he statutory language of § 666(a)(1)(A) is broad, but not unclear." *Baroni*, 2016 WL 3388302 at *3 n.3; *see also Salinas v. United States*, 522 U.S. 52, 52, 57 (1997) (describing the statute as having "plain and unambiguous meaning" and "expansive,

8

unqualified language"); *United States v. Rooney*, 37 F.3d 847, 851 (2d Cir. 1994) (noting that "Congress intended the terms of the statute to be 'construed broadly'"). Moreover, courts have specifically held that "[t]he term 'intentionally misapply,' as it is used in § 666, is not unconstitutionally vague." *United States v. Urlacher*, 979 F.2d 935, 939 (2d Cir. 1992); *see also United States v. Deen*, Crim. No. 14-184-01-03, 2016 WL 900463, at *3 (W.D. La. Mar. 7, 2016) (finding that "men of common intelligence are not required to guess at [the] meaning" of § 666(a)(1)(A)). The statute was enacted "to protect federal funds by authorizing federal prosecution of thefts and embezzlement from programs receiving substantial federal support even if the property involved no longer belonged to the federal government." *United States v. Cicco*, 938 F.2d 441, 445 (3d Cir. 1991). To that end, "§ 666 convictions based on the use of public money for political activities [are] unexceptionable." *United States v. Genova*, 333 F.3d 750, 755 (7th Cir. 2003); *see also United States v. Willis*, 844 F.3d 155, 165 (3d Cir. 2016) (noting that Congress intended that § 666 be used "to root out public corruption").

Defendants' argument that the statute improperly criminalizes political activities is not persuasive. That argument conflates motive (political considerations) with *mens rea* and conduct (intentional misapplication). As discussed in Section A, *supra*, the former is merely the reason a defendant may engage in activities that violate Section 666, while the latter is what triggers prosecution under the statute.[9] This Court is satisfied that both the plain text of the statute, as well as court decisions, put Defendants on notice that intentional misapplication of Port Authority

---

[9] For example, had Defendants chosen to retaliate against Mayor Sokolich by withholding political support, or failing to invite him to a political fundraiser, the Government would have no basis upon which to charge them with violating Section 666.

9

resources was criminal and gave appropriate guidance to law enforcement as to what conduct would violate the statute.[10]

Further, as applied to Defendants, the evidence introduced at trial was sufficient for a reasonable jury to conclude that Defendants understood that what they were doing was wrong. Specifically, the Government produced evidence that Defendants concealed the real reason for the lane closures from Port Authority personnel, Fort Lee officials, the New Jersey Legislature and the media both during and after the closures occurred. (*See, e.g.*, 9/26/16 Trial Tr. at 73:3-5, 81:20-25, 85:1-15, 92:20-95:20, 96:8-24, 97:9-19, 118:6-129:15, 133:11-134:17, 136:3-140:11, 145:3-148:14, 149:3-151:2, 151:13-152:5, 156:12-160:14; 9/28/16 Tr. at 11:5-24:10, 25:3-31:18; 9/29/16 Tr. at 76:9-19; 9/30/16 Tr. at 59:9-60:15; 10/5/16 Tr. at 18:11-19:4; 23:3-7, 10/6/16 Tr. at 173-75; and 10/13/16 Tr. at 77:6-93:25.) Viewing the evidence in the light most favorable to the prosecution, this Court finds that a reasonable jury could have inferred an intent to misapply Port Authority funds in violation of Section 666 from Defendants' efforts to conceal their activities. *See, e.g.*, *United States v. Dubón-Otero*, 292 F.3d 1, 11-12 (1st Cir. 2002) (citing evidence of concealment introduced at trial as a basis upon which "a jury could find that defendants 'without valid authority' embezzled, stole or obtained by fraud money or property"). Accordingly, Defendants' void-for-vagueness challenge as to their convictions is unavailing.

---

[10] Nor is this Court persuaded by Defendants' argument that principles of federalism require a narrow reading of Section 666 to limit it to an "anti-theft and anti-bribery law." (*See* BB at 5-8.) As noted above, the statute was intended to be, and has been, read broadly in order to encompass an array of wrongful conduct. *See, e.g.*, *Willis*, 844 F.3d at 165 (noting that "Congress expressly intended 'to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies that are disbursed to private organizations or State and local governments pursuant to a federal program.'") (quoting S. Rep. No. 98-225, at 369 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3510); *United States v. Baroni*¸ 2016 WL 3388302, at *5 n.4 (rejecting defendants' argument to limit the reach of the statute because it is captioned "'Theft or bribery concerning programs receiving Federal funds' and has been referred to as an 'anti-bribery" rule,' finding that 'a caption alone does not define a statute's essential elements.'") (citing *United States v. Thompson*, 484 F.3d 877 (7th Cir. 2007)).

### 2. *Sufficiency of the Evidence*

Defendants also argue that the Government failed to introduce sufficient evidence to warrant a conviction under Section 666, because 1) property is limited to tangible property, 2) neither defendant personally benefitted from the lane closures, 3) Baroni had the authority "to undertake every action alleged in the Indictment," and 4) the value of the property at issue was under the $5,000 statutory minimum. (BB at 6-9, KB at 38-49.)

First, Section 666 does not limit the definition of property to tangible goods. *Baroni*, 2016 WL 3388302, at *6 (discussing the definition of property under the statute); *see also United States v. Lawson*, No. Crim. 3:08-21-DCR, 2009 WL 1324157, at *2 (E.D. Ky. May 11, 2009) (finding that "employee time is property within the meaning of this term in § 666(a)(1)(A) because this term includes both tangible and intangible property" and holding that "engineer estimates constitute 'property'" for the purposes of § 666(a)(1)(A)). Accordingly, "'compensation paid to [Port Authority] personnel in connection with the lane realignment,' losses incurred from repeating a spoiled traffic study, and the value of the access lanes and toll booths" are permissible under Section 666. *Baroni*, 2016 WL 3388302, at *6.

Second, as this Court has ruled previously, a person may violate Section 666 even if he or she does not realize a personal gain. *See Id.* at *6 (finding that "[m]isapplication can refer to any improper use of property, whether or not for personal gain, and can even encompass situations in which an organization benefits from the misuse"); *see also United States v. Frazier*, 53 F.3d 1105 (10th Cir. 1995) (finding misappropriation of property under § 666(a)(1)(A) where an employee falsely certified that federal funds were used for training purposes, but instead used those funds to purchase computers for the organization); 3D CIR. MODEL CRIM. JURY INSTR. § 6.18.666A1A-3

(stating that misapplication "includes the wrongful use of the money or property for an unauthorized purpose, even if such use benefitted the organization").

Third, although Baroni had substantial authority as the Deputy Director of the Port Authority, *see, e.g.*, 9/23/16 Tr. at 135-136; 10/11/16 Tr. at 31-32, the Executive Director, Pat Foye, testified at trial that Baroni violated Port Authority policies regarding lane closures.[11] (*See* 9/21/16 Tr. at 103:6-12, 131:22-132:4, 154:11-18.) Additional testimony indicated that the lane reductions were not in line with routine Port Authority procedures and departed significantly from prior practices. Tellingly, witnesses testified that traffic studies are ordinarily conducted without any lane closures or disruptions to traffic. (10/6/16 Tr. at 33-34 (testimony of Port Authority Engineer Umang Patel); 9/22/16 Tr. at 150:17-151:3 (testimony of Port Authority head of Government and Community Relations Tina Lado); 9/26/16 Tr. at 102:3-103:14 (testimony of co-conspirator David Wildstein).) The trial testimony also indicates that the failure of Port Authority personnel to respond to Mayor Sokolich's requests for information or assistance ran counter to the Port Authority's typical efforts to communicate with local officials. (*See* 9/22/16 Tr. at 82:3-84:5, 143:22-148:23; 9/21/16 Tr. at 108:19-110:17.) Accordingly, the jury could have reasonably found that Baroni did not have the authority to close or realign the lanes as he did.

Finally, in order "to avoid prosecutions for minor kickbacks and limit violations to cases of outright corruption," charges under Section 666 may only be brought if the property in question is worth at least $5,000. *United States v. Abbey*, 560 F.3d 513, 522 (6th Cir. 2009); *see also United States v. Briston*, 192 F. App'x 84, 86 (3d Cir. 2006) (stating that the $5,000 threshold is a

---

[11] This Court is unpersuaded by Baroni's argument that the lack of written policies regarding lane closures or realignments indicates that he had absolute authority to manage Port Authority resources or lanes. (BB at 11-12.) Baroni equates the absence of written policies with unfettered power – they are not the same thing. More importantly, Baroni made this argument at trial and the jury's verdict indicates that the jurors rejected it.

jurisdictional requirement). Defendants argue that the Government "failed to prove that the salary and wages paid to Port Authority employees were not bona fide salary or wages under § 666(c)" and "failed to prove that a significant amount of the expenses incurred by the Port Authority [were] reasonably foreseeable." (BB at 15-16, KB 45-49.) This Court finds no support, nor do Defendants provide any, for their proximate cause argument. Defendants' "knowledge of jurisdictional fact[s] is irrelevant." *United States v. Crutchley*, 502 F.2d 1195, 1201 (3d Cir. 1974). The determination of whether wages are "bona fide" and subject to the provision's protection is a question of fact for the jury. *See, e.g.*, *United States v. Williams*, 507 F.3d 905, 909 (5th Cir. 2007) (noting that "[w]hether wages are bona fide and earned in the usual course of business is a question of fact for the jury to decide"). As this Court previously held, "although § 666(c)'s safe harbor provision protects bona fide compensation paid in the 'usual course of business,' it does not apply where employee services have been diverted to work that is not part of an organization's usual course of business." *See Baroni*, 2016 WL 3388302 at *6 (citing cases). Here, the Government introduced evidence that Defendants diverted Port Authority personnel to do work that was not part of the agency's "usual course of business" when reconfiguring the access lanes. (*See, e.g.*, 9/26/16 Tr. at 102:3-103:14; 10/5/16 Tr. at 214:19-25, 224:16-25; 10/6/16 Tr. at 6-7, 32:20-33:5.) The jury could reasonably find that the value of compensation paid to Port Authority personnel, losses from a ruined traffic study, and the value of the lanes and toll booths were not bona fide and satisfied the $5,000.00 threshold.[12] Defendants' motions for Judgments of Acquittal on Counts One and Two are denied.

**Counts Three – Seven**

---

[12] The amounts alleged by the Government include $3,696.00 in compensation to tollkeepers, $5,000.00 in compensation to Port Authority personnel, and $4,400.00 to redo a traffic study. (*See* KB at 45.)

Counts Three through Seven of the Indictment allege that Defendants conspired to commit and did commit wire fraud in violation of 18 U.S.C. § 1349 and §§ 1343 and 2.[13] The elements of wire fraud are "(1) a scheme or artifice to defraud for the purpose of obtaining money or property, (2) participation by the defendant with specific intent to defraud, and (3) use of the mails or wire transmissions in furtherance of the scheme." *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012); *see also United States v. Riley*, 621 F.3d 312, 329 (3d Cir. 2010); *United States v. Al Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004); 3D CIR. MODEL CRIM. JURY INSTR. § 6.18.1343. "Additionally, the object of the alleged scheme or artifice to defraud must be a traditionally recognized property right." *Al Hedaithy*, 392 F.3d at 590 (internal citation omitted).

Defendants challenge their convictions on these counts, alleging that the Government failed to present sufficient evidence that Defendants defrauded the Port Authority because Baroni had the authority to close the Local Access Lanes. (BB at 25.) Baroni argues that "at most" the evidence shows that Defendants "lied to obscure the political motivation behind the otherwise permissible redistribution of public resources."[14] (BB at 25.) As discussed above, the Government presented evidence at trial from which the jury could reasonably have found that Baroni did not have the authority to change the lane configurations, and in fact, did defraud the Port Authority.

---

[13] The substantive crime of wire fraud itself is defined in relevant part as:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

[14] This Court leaves aside the question of why Defendants would need to lie to cover up their actions if they believed them to be permissible.

The existence and scope of Baroni's authority was a question of fact for the jury, and one that the jurors resolved in favor of the prosecution.[15] Defendants' Motions for Judgments of Acquittal on Counts Three, Four, Five, Six and Seven are denied.

**Counts Eight and Nine**

Defendants were also convicted of conspiring against civil rights, in violation of 18 U.S.C. § 241, and depriving residents of Fort Lee of their civil rights in violation of 18 U.S.C. §§ 242 and 2. Section 242 prohibits persons acting "under color of any law, statute, ordinance, regulation, or custom" from "willfully subject[ing] any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . ." 18 U.S.C. § 242. Defendants challenge their convictions on Counts Eight and Nine, alleging: 1) that there is no constitutional right to intrastate travel (KB 53); 2) that the Government failed to prove that Defendants had an illegitimate purpose in closing the dedicated lanes (KB 51-56, BB 28-29, 34); 3) there was no deprivation of a right to localized travel on public roadways because motorists were only delayed, rather than prohibited from traveling (BB 33-34); and 4) the shocks the conscience test as set out in the jury instructions is "hopelessly vague" and the Government also failed to prove that Defendants' conduct did, in fact, shock the conscience (KB 55-57, BB 33).

---

[15] Defendants go to great lengths to attempt to characterize the wire fraud charges as "an impermissible end-run around Supreme Court limitations on the scope of honest services fraud" in contravention of that court's decision in *Skilling v. United States*, 561 U.S. 358 (2010). (BB at 35.) To do so, Defendants argue that the Port Authority was deprived of an intangible right to honest services from Defendants rather than a property right. (BB at 35-37.) There is a difference, however, between intangible rights to honest services not covered by the wire fraud statute, and intangible property rights which are. *See, e.g.*, *McNally v. United States*, 483 U.S. 350, 356 (1987); *Carpenter v. United States*, 484 U.S. 19, 25 (1987). As this Court held in its earlier decision "[d]epriving an employer of control over an organization's assets" such as toll booths, roadways, employee compensation and "the costs of redoing a traffic study" is such an intangible property right. *Baroni*, 2016 WL 3388302 at \*6, \*9.

First, this Court previously held that the right to intrastate travel exists. *See Baroni*, 2016 WL 3388302, at *9 (discussing the recognition and contours of the right and citing cases); *see also Lutz v. City of York,* 899 F.2d 255, 268, 270 (3d Cir. 1990) (holding that the right to intrastate travel exists under even the narrowest conception of substantive due process and that restrictions on that right are only permissible if they are narrowly tailored to meet significant government objectives). This Court has no basis to revisit that holding.[16]

Second, the Government introduced evidence from which a reasonable jury could conclude that Defendants closed the access lanes, not for a legitimate traffic study or other proper goal, but rather for the illegitimate purpose of harming Fort Lee residents. Testimony indicated that the lane closures were planned for the first day of the school year to maximize traffic, that Baroni discussed whether the mayor himself would be affected, and that Defendants ignored requests from Fort Lee for assistance and worked to reinstate the closures after they had been reversed. (*See, e.g.*, 9/21/16 Tr. at 136:11-139:20; 9/22/16 Tr. at 177:2-178:1; 9/26/16 Tr. at 72:19-73:8, 99:6-100:14, 101:6-11, 169:13-170:18; 9/27/16 Tr. at 49:2-51:1; GX145, 274, 368, 1091, 1102, 5003, 5008, 7004, 7006.)[17] Testimony also indicated that the Defendants lied about the existence of a legitimate

---

[16] Defendants argue that the Supreme Court's *per curiam* decision in *White v. Pauly*, 137 S. Ct. 548 (2017), "significantly limited the grounds upon which a constitutional right may be considered 'clearly established.'" (Dkt. No. 315 at 1.) This Court disagrees. The Supreme Court merely "reiterate[d]" a "longstanding principle" that precedent "does not require a case directly on point" in order for a right to be clearly established. *White*, 137 S. Ct. at 551-52. This Court applied that principle when reaching its earlier ruling. *See Baroni*, 2016 WL 3388302 at *9 (noting that "[a] right is 'clearly established,' not when every possible factual scenario as to that right is identified, but rather when parties are on notice that their actions would be unconstitutional") (citing cases).

[17] Defendants also argue that the evidence shows only that the lane closures were designed to punish Mayor Sokolich, not harm Fort Lee residents. (BB at 38-39.) However, it was not necessary that the Government show that the Defendants' only or main goal was to harm that city's residents. *See, e.g,*, *United States v. Ellis*, 595 F.2d 154, 162 (3d Cir. 1979) (stating that the law does not "require that the immediate intent to violate constitutional rights predominate over the ultimate purposes which that violation is designed to achieve"); *see also United States v. Piekarsky*, 687 F.3d 134, 144 (3d Cir. 2012). For the same reason, this Court is unpersuaded by Defendants' contention that because persons other than Fort Lee residents were harmed, they lacked the specific intent to injure the rights of only Fort Lee residents. (BB at 29-30.)

traffic study in order to hide their true purpose for the lane closures. (*See e.g.*, 9/27/16 Tr. at 56:6-58:18.)

Third, this Court finds no basis upon which to limit the right to intrastate travel only to situations in which residents were prevented from traveling as Defendants request. (BB at 33-34, KB 54-55.) The case law makes no such distinction, nor do Defendants provide any support for a determination that there is no deprivation where residents are merely delayed in their travels. The right articulated by the Third Circuit in *Lutz* "is freedom to travel within a state, subject to abridgement by a significant government interest narrowly tailored to achieve that goal." *Baroni*, 2016 WL 3388302 at *9 n.8. The violation of the right is demonstrated by an infringement of the right for an improper purpose, not by the severity of the infringement. "Where traffic is a byproduct of a significant government interest imposed in a limited fashion to meet that goal, it may be constitutional." *Id.* Neither the evidence nor the testimony supported a legitimate or significant governmental interest in this case.

Finally, the "shocks the conscience" standard as given to the jury was not vague. This standard is routinely given in cases involving violations of substantive due process rights. *See, e.g.*, *United States v. Lanier*, 520 U.S. 259, 262 (1997). In informing the jurors that they could consider "the purpose of the lane and toll booth reductions," "the amount of time and planning that went into them," "the manner in which they were carried out," "whether the defendants persisted with . . . the reductions despite having information about their consequences," and "whether the defendant[s] intended to deprive Fort Lee residents of their right to localized travel," (10/26/16 Tr. at 83:21-84:6) this Court merely exercised its discretion to "tailor" the standard to the facts of this particular case. *United States v. Garrett*, 574 F.2d 778, 783 (3d Cir. 1978) (noting that the trial court had discretion to use "particular language in charging the jury"). Whether Defendants'

17

conduct did, in fact, shock the conscience, was a purely factual issue for the jury and one the jury resolved in favor of the prosecution. It is not for this Court to replace the jury's determination with its own.

Therefore, Defendants' Motions for Judgments of Acquittal on Counts Eight and Nine are denied.

### C.

Defendants also seek a mistrial based on post-trial statements attributed to Juror #10 in a November 4, 2016 NewJersey.com article. (BB at 41-42.) Juror #10 is quoted as saying that November 2, 2016 "was probably the worst day of" deliberations. (BB Ex. D1-D3.) Defendants argue that this statement creates "a genuine question whether the jury engaged in partial deliberations without the entire jury present" in contravention of this Court's instruction not to deliberate on that date. (BB at 42.) This Court disagrees. Juror #10's statement reflects his perception of the deliberations process, but provides no evidence that the jurors ignored this Court's instructions. As such, there are no grounds for a mistrial and Defendants' Motions for a New Trial are denied.[18]

### IV.    Conclusion

---

[18] In the alternative, Defendants contend that this Court should question the jurors or allow counsel to question them as to the events of November 2, 2016. (BB at 41-42.) Federal Rule of Criminal Procedure 606(b) prohibits such questioning absent evidence of "(A) extraneous prejudicial information . . . improperly brought to the jury's attention; (B) an outside influence . . . improperly brought to bear on any juror; or (C) a mistake . . . in entering the verdict on the verdict form." FED. R. CRIM. P 606(b). Defendants do not allege that any of these circumstances exist. Even if Rule 606 permitted post-trial questioning, it would not be appropriate here, where there is no clear evidence of impropriety. *See, e.g.*, *United States v. Anwo*, 97 F. App'x 383, 386-87 (3d Cir. 2004) (noting that "post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts") (internal citation omitted).

For the reasons set forth above, Defendants' Motions for Judgments of Acquittal and for a New Trial are **DENIED**.  An appropriate order follows.

s/ *Susan D. Wigenton*_____
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig:     Clerk
cc:       Parties